UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED INVESTORS LIFE INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DONNA GRANT, individually and as Administrator of the Estate of George H. Grant, HELEN FAUERBACH, JIM GRANT, KENNY GRANT, BRANDON GRANT, and DOES 1 through 20, inclusive,<br><br>　　　　Defendants.<br>_____/<br>DONNA GRANT, individually and as Administrator of the Estate of George H. Grant,<br><br>　　　　Cross-Plaintiff,<br><br>　　v.<br><br>UNITED INVESTORS LIFE INSURANCE COMPANY, and DOES 1 through 100, inclusive,<br><br>　　　　Cross Defendants. | No. 2:05-cv-1716-MCE-DAD<br><br><br><br>MEMORANDUM AND ORDER |

----oo0oo----

///

1

In instituting the present Complaint in Interpleader under Federal Rule of Civil Procedure 22,[1] Plaintiff United Investors Life Insurance Company ("United Investors") seeks a discharge from any further liability with respect to the proceeds of a life insurance policy taken out by its insured, George Grant ("George"). Jurisdiction over United Investor's Complaint is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332.

United Investors argues that is entitled to interplead the policy proceeds because George's death has been deemed a homicide, and because his wife, Defendant Donna Grant ("Donna"), has not been cleared as a suspect in her husband's murder. Donna now moves for summary judgment on grounds that in the absence of any other potential policy beneficiaries, the instant action in interpleader cannot be maintained. In response, United Investors has filed a counter motion for judgment in interpleader on grounds that all prerequisites for a discharge as to its policy proceeds have in fact been satisfied. Finally, United Investors has also filed its own request for summary judgment, or alternatively for summary adjudication, with respect to Donna's Cross-Complaint against United Investors.

For the reasons set forth below, Donna's summary judgment is denied. United Investor's Motion for Judgment in Interpleader is granted.

///
///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

2

1      Finally, while United Investor's request for summary
2 judgment as to Donna's Cross-Complaint is denied, partial summary
3 judgment will be granted as to certain of the claims pled in the
4 Cross-Complaint.

## BACKGROUND

8      On or about February 10, 1998, George obtained a policy of
9 life insurance, number 40007698957, issued by United Investors in
10 a face amount of $500,000.  George's wife, Donna, was designated
11 the primary beneficiary, and Donna's sister, Helen Fauerbach, was
12 listed as contingent beneficiary.
13      On or about June 15, 2004, Donna submitted a claim for
14 policy benefits to United Investors along with George's death
15 certificate.  The death certificate indicated that George had
16 died at his Fairfield, California residence on May 30, 2004 as a
17 result of a gunshot wound to the head.  The death certificate
18 described George's death as a homicide.
19      United Investor's claims file indicates that its claims
20 representative initially contacted the Solano County Sheriff's
21 Department on or about June 18, 2004 to ascertain whether Donna
22 had been implicated in her husband's murder.  On June 22, 2004,
23 Detective Brad DeWall told United Investors that no one had been
24 cleared of involvement.  Over the course of at least five
25 subsequent phone conversations with Detective DeWall between July
26 of 2004 and June of 2005, DeWall reiterated that the
27 investigation remained ongoing and that neither Donna or anyone
28 else had been ruled out as potential suspects in George's death.

3

1    United Investors initially wrote to Donna on July 2, 2004,
2 indicating that the claim for policy proceeds would remain
3 pending given the ongoing status of the homicide investigation.
4 According to United Investors, it was concerned about paying
5 Donna the policy proceeds given the fact that she had not been
6 cleared of involvement, and given the fact that she would not be
7 entitled to collect under the policy if she was indeed
8 responsible for George's death.
9    On August 25, 2005, more than thirteen months after Donna's
10 claim for policy benefits was submitted, United Investors
11 commenced the present action by filing its Complaint in
12 Interpleader and depositing the face amount of the policy, plus
13 interest (for a total of $518,616.44) with the Clerk of this
14 Court.  On or about September 19, 2005, Donna responded by filing
15 her own claim against United Investors in the form of a Cross-
16 Complaint alleging that United Investors wrongfully delayed
17 paying the benefits due her under the United Investors policy.
18 In addition to requesting declaratory relief and alleging claims
19 for breach of contract and breach of the covenant of good faith
20 and fair dealing, Donna's Cross-Complaint also alleges, *inter
21 alia*, claims sounding in fraud as well as claims for intentional
22 and negligent infliction of emotional distress stemming from
23 United Investors' handling of the subject life insurance claim.
24 ///
25 ///
26 ///
27 ///
28 ///

4

**STANDARD**

**Interpleader.** A stakeholder holding funds or property to which conflicting claims may be made can protect itself from multiple liability, and require potential claimants to litigate between themselves who is entitled to the funds or property, by commencing an action in interpleader. Rule 22 authorizes the filing of interpleader actions in federal courts,[2] stating as follows:

> "Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability..."

The court's jurisdiction in an interpleader action extends both to potential and actual claims. <u>Minn. Mut. Life Ins. Co. v. Ensley</u>, 174 F.3d 977, 980 (9th Cir. 1999). The purpose is to protect the stakeholder against the possibility of multiple liability on the same obligation, even where only one claim is pending. See <u>Federal Civil Procedure Before Trial</u> (Rutter Group 2006), Ch. 10:90.7, p. 10-25.

---

[2] Although interpleader actions in federal court may also be premised on the Federal Interpleader Act, 28 U.S.C. § 1335, the present claim is premised solely on Rule 22. The general prerequisites for maintaining an interpleader action are identical for both statutory and Rule 22 interpleader. While statutory interpleader does alter certain jurisdictional requirements, those requirements do not apply to the instant controversy. Procedural distinctions between the two interpleader alternatives are also not germane to this action, except that under Rule 22 interpleader cross claims can be asserted so long as such claims arise out of the same "transaction or occurrence" as the obligation forming the basis of interpleader. See <u>Sayer Bros., Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 150 F. Supp. 2d 907, 917 (S.D. W.V. 2001). There is no dispute that Donna's Cross-Complaint herein satisfies this test.

Actual claims need not have been actually filed; it is sufficient that the stakeholder can demonstrate a real and reasonable fear of multiple liability. <u>Dunbar v. U.S.</u>, 502 U.S. 506, 511 (5th Cir. 1974), citing <u>State Farm Fire & Cas. Co. v. Tashire</u>, 386 U.S. 523 (1967). If the stakeholder has a bona fide fear of several prospective claims, interpleader is proper. The relative merit of the claims is not relevant. <u>Algemene Bank Nederland, N.V. v. Soysen Tarim Urunleri Dis Ticaret Ve Sanayi, A.S.</u>, 748 F. Supp. 177, 180 (S.D.N.Y. 1990).

Generally, an interpleader action consists of two stages. First, the stakeholder's right to interplead is determined. In order to adjudicate that right, the stakeholder brings a motion for discharge, or for judgment in interpleader. After the stakeholder's right to interplead has been determined, the second stage of an interpleader proceeding is to adjudicate the merits of any conflicting claims to the interpled property. See <u>Aetna Cas. & Sur. Co. v. Ahrens</u>, 414 F. Supp. 1235, 1249 (S.D. Tex. 1975).

The stakeholder seeking discharge, and judgment in interpleader, has the burden of showing that interpleader is justified. It must demonstrate that it is or may be exposed to multiple liability with respect to property it holds because of conflicting claims. <u>Interfirst Bank Dallas, N.A. v. Purolator Courier Corp.</u>, 608 F. Supp. 351, 353 (D.C. Tex. 1985).

///
///
///
///

**Summary Judgment**.  The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  *See* Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); *see also* Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party.  U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Once the moving party meets the requirements of Rule 56 by showing that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial."

7

1  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).
2  Genuine factual issues must exist that "can be resolved only by a
3  finder of fact, because they may reasonably be resolved in favor
4  of either party." Id. at 250.  In judging evidence at the
5  summary judgment stage, the court does not make credibility
6  determinations or weigh conflicting evidence.  *See* T.W. Elec. v.
7  Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-631 (9th Cir.
8  1987), citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
9  Corp., 475 U.S. 574, 587 (1986).

**ANALYSIS**

**1.   United Investors Properly Interpled the Policy Proceeds**

In moving for summary judgment as to United Investors'
Complaint in Interpleader, Donna claims there is no potential for
multiple adverse claims against the policy proceeds.  She argues
that United Investors cannot establish that there are two or more
claimants to said proceeds, and points out that defaults have
been entered against the other potential beneficiaries named as
Defendants in the Complaint in Interpleader.[3]  (See Donna's
Motion for Summary Judgment, 5:17-19).

///
//

---

[3] Those Defendants include Helen Fauerbach, the named contingent beneficiary under the terms of the policy, George's son, Brandon Grant, and George's two brothers, Jim Grant and Kenny Grant.  George and Donna's minor daughter, Nicole Grant, was not listed as a Defendant.

8

Donna contends that she is entitled to judgment in her favor because United Investors has no cognizable interpleader claim, and asks that the proceeds of the United Investors policy, plus interest, be paid to her forthwith.

As indicated above, however, the scope of interpleader extends to potential, as well as actual claims. Ensley, 174 F.3d at 980. While defaults have been entered against the other potential claimants to the policy proceeds, those defaults have not been reduced to judgment and no potential contingent beneficiary has expressly waived his or her right to those proceeds.

California Probate Code § 252 prevents an named beneficiary under a policy of life insurance from receiving policy benefits if he or she kills the person insured by the policy, stating as follows:

> "A named beneficiary of a bond, life insurance policy, or other contractual arrangement who feloniously and intentionally kills the principal obligee or the person upon whose life the policy issued is not entitled to any benefit under the bond, policy, or other contractual arrangement, and it becomes payable as though the killer had predeceased the decedent."

In an insurance case like this one where federal jurisdiction is founded on diversity of citizenship, state law governs substantive issues. Am. States Ins. Co. v. Borbor, 826 F.2d 888, 890 n. 2 (9th Cir. 1987). Indeed, Donna does not dispute that Probate Code § 252 applies to these proceedings.

///
///
///
///

9

Aside from arguing that United Investors investigation into the circumstances of George's murder has been inadequate (as discussed in more detail below), Donna largely ignores § 252, instead choosing to focus her argument on the fact that no other definitive claims have surfaced to date.

It is nonetheless undisputed that the circumstances of George's death remain unresolved, and no evidence has been presented that Donna herself has been exonerated as a suspect in her husband's murder. Indeed, as of June 14, 2005, the last contact had with Detective DeWall before filing the present interpleader action on August 25, 2005, United Investor's claims file notes specifically indicate that no one had been so cleared. (See Exhibit "E" to Garrison Decl., p. UIL 372).

The fact that Donna has not been cleared as a suspect must be viewed in conjunction with her own version of events, pursuant to which she admits being alone at the family residence with her husband the night of George's murder.[4] She claims that after going upstairs to bed between 1:30 and 2:00 a.m. the morning of the murder, she awoke in the middle of the night and went downstairs. While downstairs, she claims to have heard footsteps and a subsequent gunshot. Donna then discovered her husband shot to death in the couple's bedroom.

These circumstances do not bode well for any routine exoneration on Donna's part as a suspect, even if she ultimately is determined to have no role whatsoever in George's demise.

///

---

[4] The couple's minor daughter, Nicole, was staying with a friend the night her father was killed.

10

1  Given the mandate of Probate Code § 252, United Investors had a
2  bona fide fear of multiple liability if it elected to pay Donna
3  while she remained a suspect.  If her claim to the policy
4  proceeds was subsequently disqualified by a determination that
5  she had indeed killed her husband, then other claimants would
6  undisputedly have viable claims given the statutory mandate that
7  upon such a finding the policy proceeds would be payable "as
8  though the killer had predeceased the decedent".  Cal. Prob. Code
9  § 252.

10     Donna argues that the policy simply states that payment
11 shall be made "to the beneficiary upon receipt of due proof of
12 the death of the insured while this policy is in force" (See
13 Defendant's Additional Statement of Undisputed Fact No. 48), and
14 claims that the policy does not predicate payment upon being
15 cleared as a murder suspect.

16     In the Court's view that argument is disingenuous.  Probate
17 Code § 252 must necessarily be implied by law into every policy
18 of life insurance, in accordance with the well established rule
19 that no person shall be permitted to take advantage of his own
20 wrong, or acquire property by his own crime.  See, e.g., Harper
21 v. Prudential Ins. Co. Of Am., 233 Kan. 358, 364 (1983), citing
22 Smith v. Todd, 152 S.E. 2d 506 (1930) 4 Couch on Insurance 2d §
23 27.149, and annotations in 70 A.L.R. 1539 and 91 A.L.R. 1486.
24 While the Court is unable to locate any authority squarely
25 applying this principle to § 252, examination of California
26 Insurance Code § 533 is both analogous and instructive.
27 ///
28 ///

11

Consistent with the same legal maxim that a person must not be permitted to benefit from his own wrongdoing, § 533 provides that an insurer "is not liable for a loss caused by the wilful act of the insured..."  Case law interpreting § 533 holds unequivocally that this provision is read as an implicit term into every insurance contract. Zurich Ins. Co. v. Killer Music, Inc., 998 F.2d 674, 678 n. 2 (9th Cir. 1993).  Indeed, the provisions of § 533 have been deemed to be equivalent to an exclusionary clause in the insurance policy itself. Allstate Ins. Co. v. Gilbert, 852 F.2d 449, 451 (9th Cir. 1988).

    The same rationale for implying Insurance Code § 533 into every contract of insurance mandates that Probate Code § 252 also be implied as a matter of law into every life insurance policy. Because of § 252's prohibition on paying policy benefits to a beneficiary who killed the insured, and its clear direction that under such circumstances benefits be paid as if the primary beneficiary had predeceased the insured, United Investors had a bona fide concern of multiple liability if it were to pay Donna and she was subsequently found responsible for George's death.

    While no California case appears to be expressly on point, in Harper v. Prudential Ins. Co. of Am., supra, Prudential paid the primary beneficiary Fenton the proceeds of its insurance policy despite indication of the beneficiary's potential involvement in murdering the insured under Prudential's policy. When Fenton was convicted two years later for murdering the insured, the children of the insured demanded payment.  The court held that Prudential should have either delayed making payment or filed an interpleader action.  233 Kan. at 372.

12

1  Similarly, in Glass v. U.S., 506 F.2d 379 (10th Cir. 1974), the
2  Tenth Circuit found that the insurer could not avoid paying the
3  contingent beneficiaries under circumstances where it had paid
4  the primary beneficiary despite knowledge of her indictment for
5  the insured's murder.  The Glass court noted that the insured
6  have avoided double payment by simply interpleading its policy
7  benefits.  Id. at 382.
8      While both Harper and Glass involve situations where the
9  primary beneficiary's involvement in the insured's murder was
10 admittedly far clearer than any responsibility on Donna's part
11 herein, the cases still support the proposition that an insurance
12 company may be liable for negligently paying a primary
13 beneficiary if that beneficiary is ultimately found to have
14 murdered the insured.  In this case, that possibility represented
15 a "real and reasonable fear of multiple liability" on the part of
16 United Investors that justifies interpleader.  Dunbar v. U.S.,
17 502 U.S. at 511.
18     It follows that Donna's request for summary judgment must be
19 denied.  Even though no other claims have yet been made on the
20 United Investors policy, that could change if Donna is found to
21 have been involved in her husband's murder.  There remains a bona
22 fide possibility of multiple liability justifying interpleader.
23 Because United Investors has made that showing, and because the
24 policy proceeds, plus interest, have been deposited with the
25 Court, United Investors is entitled to judgment in interpleader
26 and is accordingly absolved of any future liability with respect
27 to the policy proceeds.
28 ///

13

Donna must now adjudicate her right to those proceeds before this Court in the second stage of the interpleader proceeding.

**2.  Summary Judgment on Donna's Cross-Complaint**

As indicated above, in response to United Investor's Complaint in Interpleader, Donna has filed a Cross-Complaint alleging that United Investors wrongfully failed to pay Donna the proceeds due under George's policy of life insurance.  Donna argues that United Investors has no good faith basis to refrain from paying policy benefits to her directly, and claims that United Investors has failed to conduct an adequate independent investigation into the circumstances surrounding George's murder so as to resolve that question.  Donna seeks declaratory relief that United Investor's withholding of policy benefits was unreasonable.  Donna then goes on to assert contractual claims for breach of contract and breach of the covenant of good faith and fair dealing by virtue of United Investor's conduct.  She further seeks attorney's fees incurred in order to obtain the benefits to which she claims to be entitled.  In addition, Donna asserts claims for both intentional and negligent infliction of emotional distress under the circumstances of this case, as well as claims sounding in fraud and negligent misrepresentation due to United Investor's purported failure to pay the contracted for benefits.  Finally, Donna argues that United Investors should be estopped from denying coverage because of its conduct.

///
///
///

1    In moving for summary judgment, United Investors relies
2 almost entirely on the argument that all of Donna's claims as set
3 forth in her Cross-Complaint are barred under the so-called
4 litigation privilege codified in California Civil Code § 47.
5 United Investors points to the fact that the litigation privilege
6 has been interpreted broadly to all communications made in
7 relation to judicial proceedings, with the exception of claims
8 for malicious prosecution. Silberg v. Anderson, 50 Cal. 3d 205,
9 212 (1990). It argues that the privilege applies to Donna's
10 claims in their entirety. (United Investors' Opp., 10:16-17).
11    Aside from arguing that the litigation privilege is
12 dispositive, United Investors also contends that it cannot be
13 liable in fraud for misrepresenting that it would pay the
14 proceeds of its policy "to the beneficiary upon receipt of due
15 proof of the death of the insured", because it never denied
16 coverage and in fact interpled its policy proceeds given its fear
17 of multiple liability as discussed above. Other than that,
18 United Investors makes only a passing claim that Donna's other
19 claims, including declaratory relief, entitlement to attorney's
20 fees to obtain policy benefits, intentional and negligent
21 infliction of emotional distress, and coverage by estoppel, all
22 fail as a matter of law because the interpleader action was
23 "properly filed". (United Investors' Opp., 9:27-10:5).
24    As Donna points out, United Investors' attempt to extricate
25 itself from her Cross-Complaint sweeps too broadly.
26 ///
27 ///
28 ///

15

Donna correctly contends that United Investors' interpleader filing cannot act to absolve United Investors from liability for tortious conduct occurring prior to the time the interpleader action was commenced. Donna alleges that her Cross-Complaint is properly premised, at least in part, on United Investor's allegedly unreasonable thirteen-month delay in instituting interpleader proceedings.

Donna's contractually-based causes of action, as well as her claim for declaratory relief, survive under this theory. An unreasonable delay in paying a covered claim may support both breach of contract, as well as the related claim for breach of the implied covenant of good faith and fair dealing. See Austero v. Nat'l Cas. Co., 84 Cal. App. 3d 1, 26, 29-30. Whether or not National Investors acted properly in awaiting the results of the Solano County investigation for some thirteen months is a question of fact not amenable to disposition on summary judgment. Paulfrey v. Blue Chip Stamps, 150 Cal. App. 3d 187, 194 (1983). Although United Investors may well be able to argue that "reason and justice" required it to wait a reasonable period of time before paying a claim in order to allow law enforcement personnel enough time to complete their investigation (see Harper, 233 Kan. at 371), whether or not thirteen months was in fact reasonable here cannot be resolved as a matter of law. Moreover, Donna's entitlement to attorney's fees in order to obtain benefits she alleges were wrongfully delayed also poses the same triable issue.

Donna's claims for fraud and negligent misrepresentation, however, cannot survive summary judgment scrutiny.

16

The only basis for the alleged fraud is United Investors' supposed misrepresentation in asserting that it would pay the beneficiary policy proceeds upon proof of the George's demise. As stated above, because United Investors did pay the claim and because interpleading the policy concerns was proper under both Rule 22 and California Probate Code § 252, which must be implied into the policy of insurance, there is no misrepresentation to which claims for fraud can attach. Summary adjudication will consequently be granted as to the Seventh and Eighth Causes of Action set forth in Donna's Cross-Complaint.

That leaves the claims for intentional and negligent infliction of emotional distress, and for coverage by estoppel.[5] Because United Investors' only argument for disposing of those claims lies with a claim that they are barred by the litigation privilege, summary adjudication cannot be granted. Donna claims, and a fair reading of her Cross-Complaint supports, the contention that these claims are also based, at least in part, on United Investor's delay in waiting more than a year before filing the present interpleader action.

///
///
///

---

[5] United Investors also includes a request in its Notice of Counter-Motion that summary adjudication be granted as to Donna's request for punitive damages, but its supporting points and authorities contain no argument to support that request. Only United Investors' Reply contains any discussion of the punitive damage issue, and because the Court declines to considers matters raised for the first time by way of reply, it will not consider the propriety of punitive damages at this time. See Lujan v. Nat'l Wildlife Fed., 597 U.S. 871, 894-95 (1990).

17

**CONCLUSION**

For the reasons set forth above, both parties' request for summary judgment (Donna's as respect to the propriety of interpleader and United Investors' vis-a-vis the viability of Donna's Cross-Complaint) are DENIED.[6] United Investors' request for judgment in interpleader is, however, GRANTED. United Investors is hereby discharged of any liability with respect to the proceeds of its life insurance policy issued to George Grant, and the entitlement to those proceeds between potentially competing claimants must now be adjudicated. Finally, with regard to Donna's Cross-Complaint, while United Investors' request for summary judgment is denied, summary adjudication will be GRANTED as to the Seventh and Eighth Causes of Action, for fraud and negligent misrepresentation.

IT IS SO ORDERED.

DATED: May 8, 2006

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[6] The Court notes that United Investors's has objected strenuously to the Declaration of Clinton Miller submitted by Donna in Her Opposition to United Investors' Counter-Motion. Because the Miller Declaration was not relied upon by the Court in ruling upon the instant motions, those objections need not be addressed.

18